Filed 10/2/13  San Roman v. City of El Monte CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JONATHAN SAN ROMAN, | B237543 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. KC058976) |
| CITY OF EL MONTE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Salvatore T. Sirna, Judge.  Affirmed.

Taylor & Ring and John C. Taylor; Esner, Chang & Boyer and Holly N. Boyer for Plaintiff and Appellant.

Law Offices of Leech & Associates and D. Wayne Leech for Defendant and Respondent.

Jonathan San Roman (appellant) appeals from a final judgment entered against him after the trial court granted the City of El Monte's (the City) motion for summary judgment on appellant's cause of action against the City for dangerous condition of public property. We affirm.

**CONTENTIONS**

Appellant contends that the trial court erred in granting summary judgment because a reasonable juror could conclude that the conditions at the crosswalk where appellant was injured created a substantial risk of injury. Appellant further contends that the immunities provided under Government Code sections 830.4 and 830.8[1] do not shield the City from liability in this case.[2]

**FACTUAL BACKGROUND**

**The accident**

On September 20, 2009, at 8:15 p.m., Jimmy Oscar Banuelos (Banuelos) was driving westbound on Valley Boulevard towards the intersection of Meeker Avenue. Banuelos was traveling in the No. 1 lane. Appellant was walking southbound, crossing Valley Boulevard at its intersection with Meeker Avenue, after having activated a cautionary pedestrian signal in place at the intersection. It was dark outside.

The car traveling westbound in the No. 2 lane came to a stop before appellant stepped into the crosswalk, to allow appellant and his friends to walk across. Appellant

---

[1]     All further statutory references are to the Government Code unless otherwise indicated.

[2]     The City has included in its respondent's brief several arguments surrounding the trial court's alleged error in admitting appellant's expert's report into evidence. Under California Rules of Court, rule 8.108(g), respondent was required to file a cross-appeal within 20 days after the superior court served notice of the first appeal. No such cross-appeal is contained in the record of this case, therefore we have no jurisdiction to consider respondent's claims of error. (Cal. Rules of Court, rule 8.108(g)(1) [must file notice of cross-appeal within 20 days of clerk's service of notice of appeal from same judgment]; *Green Tree Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782 [the timely filing of a notice of appeal, or cross-appeal, is a jurisdictional matter].)

remembers seeing some embedded lights flashing in the street after he pushed the button to cross.

Banuelos's car was traveling at about 30 to 35 mph. After crossing lane No. 2 in front of the stopped car, appellant walked about two steps into the No. 1 lane when he was struck by Banuelos's car.

Appellant did not see the car slow or attempt to stop to avoid the accident. Appellant was unaware of anything that obstructed Banuelos from seeing appellant before the accident.

**The intersection**

Valley Boulevard runs in a general east-west direction and Meeker Avenue runs in a general north-south direction in the City. Valley Boulevard is a major thoroughfare with a speed limit in the area of Meeker Avenue posted at 35 mph. Meeker Avenue terminates approximately one block north of Valley Boulevard. Traffic on Meeker Avenue is controlled by stop signs at Valley Boulevard, but there is no traffic control on Valley Boulevard at Meeker Avenue. At the intersection of Meeker Avenue, Valley Boulevard is a four lane, approximately 85-foot wide street.

There is a pedestrian crosswalk on the western portion of Meeker Avenue across Valley Boulevard. There are also pedestrian crosswalk signs and signals on both the north sidewalk and south sidewalk of Valley Boulevard at Meeker Avenue. The pedestrian crossing signals, when activated by a push button, flash an amber light in the west and east directions. The signals are also designed to activate flashing lights which are embedded into the street along both crosswalk lines going across Valley Boulevard. There are eight embedded lights on the west side of the crosswalk and eight embedded lights on the east side of the crosswalk.

The word "LOOK" in both English and Spanish, with arrows pointing east and west, were painted in the crosswalk with white paint just off of the north and south curbs of Valley Boulevard, to alert pedestrians before entering the crosswalk.

Approximately 166 feet east of the west curb of Meeker Avenue, on the north side of Valley Boulevard, was another pedestrian crossing sign. The two pedestrian signs on

the north and south sides of Valley Boulevard were diamond-shaped with a fluorescent yellow-green background. The pedestrian crossing signs, pedestrian crossing signal, and painted crosswalk were in place to warn motorists traveling in both directions on Valley Boulevard that pedestrians might be ahead.

In 2004, the City participated in a pilot project to install the embedded lights in the asphalt along the crosswalk on Valley Boulevard at the intersection of Meeker Avenue. The City received a grant from the California Office of Traffic Safety for the purchase of the in-roadway LED strobe lighting and flashing beacons. This was an experimental project; embedded lights are not a traffic engineering standard nor are they required in California.

For the first four years after the embedded strobe lights and beacon were installed in 2004, the City's public maintenance division conducted weekly inspections of the lights and repaired them immediately if they were not operating correctly. The City's inspections stopped in 2009. At that time the City knew that some of the lights were not working and that others would soon stop working.

**Post-accident investigation**

Officer Rodriguez inspected the pedestrian crossing signals at Valley Boulevard and Meeker Avenue on the evening of the accident and noted the large amber flashing lights on both of the pedestrian signal poles on the north and south side of Valley Boulevard were operating properly when the button was pushed. Some of the lights in the diamond-shaped pedestrian crosswalk sign that faced eastbound that were burned out. Those lights were not flashing inside of the sign, but other lights were flashing inside the sign.

Officer Rodriguez also inspected the 16 flashing lights embedded in the street that run along both lines of the crosswalk. There are eight embedded lights on the west portion of the crosswalk and eight embedded flashing lights on the east portion of the crosswalk. Out of the 16 embedded light fixtures, two were operational and flashing when the button was pushed. The two that were working were on the west side of the crosswalk approximately in the middle of the street.

4

**Accident history**

The City had a history of one other incident involving a pedestrian and an automobile in the crosswalk at Valley Boulevard and Meeker Avenue between 1996 and 2009. The date of the incident was November 20, 2000.[3]

## PROCEDURAL HISTORY

Appellant filed a complaint for damages against Banuelos and the City on June 17, 2010, and a first amended complaint (FAC) against the same defendants on October 7, 2010. The FAC alleged a cause of action for negligence against all defendants, and a cause of action for dangerous condition of public property against the City. The trial court sustained the City's demurrer to the negligence cause of action, leaving only the cause of action for dangerous condition of public property against the City.

On April 22, 2011, the City filed a motion for summary judgment. The City argued:

1. The condition of public property where appellant was struck by a motorist was not in a dangerous condition as a matter of law because the failure to have embedded lights in a crosswalk is not a dangerous condition of public property as a matter of law;

2. The City was entitled to immunity pursuant to section 830.4, which provides that a condition is not a dangerous condition merely because of the failure to provide regulatory traffic signals, stop signs, yield right-of-way signs, speed restriction signs, or distinctive roadway markings as described in section 21460 of the Vehicle Code;

3. The City is entitled to immunity pursuant to section 830.8 in that a condition is not a dangerous condition merely because of the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code; and

4. The undisputed evidence shows that no dangerous condition of public property caused the accident.

---

[3] The City does not maintain any traffic accident reports before April 17, 1996, for the intersection at issue. The City has a policy of purging traffic accident reports older than 10 years.

5

Appellant opposed the motion for summary judgment alleging that the intersection was dangerous at the time of his accident because the City had stopped maintaining the 16 in-pavement flashing warning lights that were installed along the crosswalk. Appellant explained that five years prior to the accident, the City had installed in-pavement flashers and repaired them immediately if they were not operating correctly. However, the City stopped maintaining the lights a few months before the accident. Thus, appellant argued, the night of the accident, Banuelos did not see any flashing lights, did not see appellant, and struck him in the middle of the crosswalk. Citing *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 991 (*Huffman*), *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112 (*Zelig*), 1133, and *Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1194 (*Chowdhury*), appellant asserted that whether a given set of circumstances creates a dangerous condition is usually a question of fact. Appellant explained that this only becomes a question of law when reasonable minds can come to only one conclusion. (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701.) Appellant claims the facts here, along with the opinion of an experienced traffic engineer, unquestionably permit more than one conclusion.

Appellant submitted a declaration of Harry Kreuper, a civil and traffic engineer, who opined that the City's failure to maintain the flashing lights was a substantial factor in causing the accident. Kreuper opined that flashing lights provide for a safer intersection for pedestrians when they are properly maintained, aid visibility and alert drivers that there are pedestrians in the crosswalk. They are especially beneficial at night.

Appellant argued that the defective crosswalk created a substantial risk of injury when used with due care in a forseeable manner, as defined in section 830, and that the City failed to present evidence that the defect was trivial. Appellant contended that the damaged, defective and deteriorating lights created a trap for drivers and pedestrians who were using the crosswalk with due care and reasonably relied on the lights to work. Appellant also argued that the accident history of the intersection does not prove that the property was not in a dangerous condition, and that the City was not absolved from liability by third party negligence or sections 830.4 and 830.8.

6

The City filed a reply brief along with evidentiary objections.

The summary judgment motion was heard on October 7, 2011. Following the hearing, the trial court granted the City's motion. The court concluded that defendant met its initial burden of demonstrating that there was no condition of the crosswalk which created a substantial risk of injury, as distinguished from a minor, trivial or insignificant condition, when the crosswalk was used with due care. The court cited *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1350-1352 (*Cerna*), which held that a crosswalk that lacked crossing guards and cautionary signs and signals, including no blinking lights along the parallel painted lines of the crosswalk, was not dangerous as a matter of law. Relying on *Cerna*, the court concluded that no reasonable juror could conclude that the lack of functioning flashing lights in a crosswalk created or increased the risk of harm to a pedestrian at the intersection. Without a foundational showing that the intersection was a dangerous condition, the court concluded, evidence that properly working flashing lights or supplemental warnings would have prevented the accident is not relevant, citing *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 442-443.

Final judgment was entered on November 3, 2011. Appellant filed his notice of appeal on November 22, 2011.

DISCUSSION

## I. Standard of review

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., 437c, subd. (p)(2); *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) If the plaintiff does not make such a showing, summary judgment in favor of the

7

defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action." (*Id.* at p. 853.)

We review the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; Code Civ. Proc., § 437c, subd. (c).)

## II. Dangerous condition of public property

A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) A public entity's liability for a dangerous condition of its property is governed by section 835, which provides:

> "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> "(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> "(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Thus, to successfully prove a dangerous condition of public property within the meaning of section 830, a plaintiff must prove that the condition of the public property created a substantial risk when used with due care in a foreseeable manner. "The existence of a dangerous condition ordinarily is a question of fact, but the issue may be resolved as a matter of law if reasonable minds can come to only one conclusion.

[Citation.]" (*Zelig, supra*, 27 Cal.4th at p. 1133.) Public entities are not liable for injuries attributable to an unforeseeable use of the property. (§ 830, subd. (a).)

In addition, there is no liability for injury caused by risks of a "minor, trivial or insignificant" nature. (§§ 830, subd. (a), 830.2; *Huffman, supra*, 84 Cal.App.4th at p. 991.) Section 830.2 provides:

> "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

Whether a defect in public property is trivial or insignificant under section 830.2 may be decided as a matter of law. (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 726-727 (*Fielder*).) This is to prevent the City from becoming an insurer of public ways against all defects. (*Id.* at p. 726.)[4]

## III.  Section 830.4 immunity

Section 830.4 provides immunity for a city's failure to provide certain street signs and signals. Section 830.4 reads:

> "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code."

However, "[i]f an intersection is dangerous because of the failure to provide warning or regulatory signs *and also* because of the 'conjunction of other factors,' section

---

[4]     In *Fielder*, the court held that a three-fourths inch difference in the level of two adjoining slabs of sidewalk was trivial as a matter of law. (*Fielder, supra*, 71 Cal.App.3d at p. 726.)

830.4 is no bar to liability.  [Citation.]"  (*Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1538-1539 (*Washington*).)

Section 830.8 provides further immunity.  It states:

> "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code.  Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

Thus, a public entity "loses its limited immunity under section 830.8 and is liable for injury where its failure to provide traffic regulatory or warnings signals, *of a type other than those described in section 830.4*, constitutes a concealed trap for those exercising due care, assuming the conditions of its liability under section 835 are otherwise met.  [Citation.]"  (*Washington, supra*, 219 Cal.App.3d at pp. 1536-1537.)

## IV.  **No dangerous condition of public property existed as a matter of law**

Appellant took the position that the City's failure to maintain the embedded lights at the subject crosswalk created a dangerous condition of public property.  Specifically, appellant argued "that the embedded flashing lights that run alongside the crosswalk and light up when the cautionary pedestrian signal is activated were not operating and/or missing and did not flash when the signal was activated at the time of the subject accident; and that this created a defect in the physical condition of the property and a dangerous condition of public property and an undiscovered trap which resulted in the accident."[5]

---

[5]     In his appellate briefs, appellant has discussed a second purported dangerous condition:  the failure to repaint horizontal markings across the crosswalk.  This theory was not raised during the summary judgment proceedings below.  Because this theory was not fully developed in the trial court, we will not address it.  (*Johanson Transportation Service v. Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 ["an argument or theory will generally not be considered if raised for the first time on appeal

10

In its motion for summary judgment, the City argued that the purported defect was not a dangerous condition as a matter of law, because it did not create a substantial risk of injury when used with due care in a manner prescribed by law. (§ 830.) Instead, the City argued, the defect was "of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury" when such property was used with due care. (§ 830.2.)

Both parties have cited case law relevant to the question of whether the nonfunctional embedded lights can be considered a dangerous condition of public property. In support of its position that the alleged defect is trivial as a matter of law, the City cites several cases, discussed below.

The City first cites *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434 (*Brenner*). In *Brenner*, a pedestrian was struck by a car while crossing Chase Avenue near the intersection of Estes Street in El Cajon. The plaintiff alleged that the area was heavily traveled by pedestrians due to bus stops, a park, a convenience store and a school and that the City of El Cajon had failed to take any steps to control traffic or make the area safer for pedestrians. (*Id.* at pp. 437-438.) In response to the plaintiff's allegation of heavy traffic at the intersection, the court stated: "The second amended complaint contains no allegation that Chase Avenue had blind corners, obscured sightlines, elevation variances, or any other unusual condition that made the road unsafe when used by motorists and pedestrians exercising due care [citations], and Brenner cites no authority that a dangerous condition exists absent such factors." (*Id.* at p. 440, fn. omitted.) In *Brenner,* as here, the City argues, there was no unusual condition that created a substantial risk of injury. The *Brenner* court concluded that no dangerous condition existed as a matter of law, affirming the trial court's dismissal of the case at the pleading stage. (*Id.* at pp. 443-444.)

. . . [t]hus, possible theories not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal"].)

11

In *Cerna*, an unlicensed motorist struck six people, killing one and injuring the others. The pedestrians were a family on their way to a nearby school. The surviving pedestrians and family members brought an action against the city for the alleged dangerous condition of the intersection and against the school district for failing to ensure safe school access. (*Cerna, supra*, 161 Cal.App.4th at pp. 1344-1345.) The plaintiffs enumerated seven factors which they alleged created a dangerous condition at the intersection: (1) the crosswalk was painted white, not yellow; (2) there was no sign painted in the approaching roadway with the words "'SLOW--SCHOOL XING'"; (3) there was no traffic signal; (4) there were no crossing guards; (5) signs warning of the presence of student pedestrians were either missing or in an incorrect position; (6) the crosswalk was not painted with diagonal or longitudinal lines; and (7) there were no blinking lights in the pavement along the parallel painted lines of the crosswalk. (*Id.* at p. 1348.) The Court of Appeal affirmed the trial court's grant of summary judgment on the question of whether a dangerous condition of public property existed at the intersection, holding that "Whether considered independently or cumulatively, the identified features of the intersection did not create a dangerous condition." (*Id.* at p. 1352.) Under *Cerna*, the City argues, the lack of functioning flashing lights at an intersection is not a dangerous condition of public property as a matter of law.

Next, the City cites *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177 (*Sun*). In *Sun*, a pedestrian was struck by a car and killed while attempting to cross an unmarked pedestrian crosswalk. Her family sued the City of Oakland, alleging that her death was caused by the dangerous condition of the intersection where the accident occurred. The City of Oakland moved for summary judgment, arguing that the intersection was not in a dangerous condition as a matter of law. The trial court granted the motion, and the Court of Appeal affirmed. (*Id.* at pp. 1180-1181.) The crosswalk where the pedestrian tried to cross had been marked with painted stripes in the past, but it was unmarked at the time of the accident. One driver approaching the intersection stopped to allow the pedestrian to cross, but as she emerged from behind the stopped car and into the adjacent lane of traffic, a car moved into that lane from behind the stopped car and struck her. The

12

plaintiffs' key allegation regarding a dangerous condition was the City of Oakland's failure to re-mark the intersection with painted stripes after having made it more pedestrian friendly by the installation of "bulb-outs." (*Id.* at p. 1184.)  The Court of Appeal agreed that heavy pedestrian traffic alone is not a dangerous condition.  In addition, the court noted:  "[A]ppellants do not allege any unusual physical characteristics about the crosswalk where Ms. Peng was killed, such as any visual obstructions which would establish a dangerous condition.  For example, appellants did not allege or produce any specific facts describing any particular trees, shrubbery, shadows or insufficient lighting concealing the presence of pedestrians or the crosswalk itself."  In the absence of any such obstructions or unusual characteristics, the intersection did not pose a dangerous condition as a matter of law.  (*Id.* at pp. 1189-1190.)

The *Sun* court found it significant that one of the two cars approaching the intersection did stop for the pedestrian, noting:  "Moreover, the motorist who was traveling in the same direction as Jackson had come to a complete stop prior to Ms. Peng's entering the crosswalk.  It thus appears that a reasonably careful motorist would have had no difficulty seeing a pedestrian (or in seeing a car that was stopped for a pedestrian) and stopping, which further supports the conclusion that the configuration of the subject crosswalk did not create a substantial risk of injury when used with due care."  (*Sun, supra*, 166 Cal.App.4th at p. 1190.)  The same can be said of the conditions at the intersection under scrutiny here, as one car did stop for appellant.

Finally, the City cites *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058 (*Salas*).  In *Salas*, a pedestrian was struck by a vehicle while crossing a marked intersection in the City of Victor.  (*Id.* at pp. 1061-1062.)  The plaintiffs brought suit against Caltrans for wrongful death and related causes of action, alleging that a dangerous condition of public property existed at the accident location.  Their claim was based on the lack of proper signage, controls or signals; failure to provide safe streets or highways; failing to design proper signage, controls or signals; failure to have traffic control devices in place; placing a crosswalk in the location without proper safety devices; failing to follow recommended standards as to the location of the crosswalk;

13

failing to provide the recommended crosswalk design for the location; and failing to properly enforce and/or control speed in the area. (*Id.* at p. 1062.)

The evidence presented by Caltrans established that the driver encountered two yellow pedestrian signs as well as a PED XING stencil prior to crossing the intersection where the accident occurred. Visibility was clear and there were no sight obstructions at the intersection. (*Salas, supra*, 198 Cal.App.4th at p. 1063.)

The Court of Appeal affirmed the trial court's grant of summary judgment, finding:

> "From this evidence of a well-marked crosswalk at an intersection with clear sight lines where there was no report that a pedestrian had previously been involved in an accident, the trial court properly concluded that Caltrans made a prima facie showing that no condition of property 'creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.' [Citation.]"

(*Salas, supra*, 198 Cal.Ap.4th at p. 1071.)

The *Salas* court further found that the plaintiffs had failed to identify a triable issue of material fact on this issue. (*Salas, supra*, 198 Cal.App.4th at p. 1075.)

The City compares the facts of *Salas* to the facts before us. As in *Salas*, the City argues, the undisputed evidence shows that the crosswalk is located on a straight and level road; with no curves or sight obstructions for either motorists or pedestrians; no blind corners, obscured sight lines, elevation variances, or unusual conditions that made the road unsafe to pedestrians or motorists using due care. Further, as in *Salas*, there were two signs notifying the oncoming driver of a pedestrian crosswalk, as well as painted lines marking the crosswalk. In addition, in the matter before us, there was an amber flashing light warning the driver that there were pedestrians in the crosswalk.

Pursuant to the case law described above, the City has set forth a prima facie case that the subject crosswalk was not a dangerous condition as a matter of law.

14

**V.  Appellant has failed to show that a triable issue of fact exists**

Appellant emphasizes that the question of whether or not features of public property create a dangerous condition under section 835 is generally reserved for the trier of fact.  (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 [affirming jury verdict finding that the location of a bus stop was a dangerous condition of public property where bus patrons had to cross a busy thoroughfare at an uncontrolled intersection].)  Appellant emphasizes that the City abandoned its maintenance of the embedded lights without notifying local residents or users of the subject crosswalk that most of the embedded lights were not functioning.  Appellant argues that the City thus "lured" users, including appellant, into a false sense of security in crossing at the crosswalk.

Appellant cites numerous cases which, he argues, show that a reasonable juror could conclude that the conditions at the crosswalk where appellant was injured created a substantial risk of injury to pedestrians.  As set forth below, we find the cases cited by appellant to be distinguishable.

Appellant first points to *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739 (*De La Rosa*), which was an appeal from the trial court's grant of a directed verdict for the defendant.  The plaintiffs were three individuals riding in a car on Pepper Street in San Bernardino.  Their car collided with a vehicle traveling on Rialto Avenue after the driver of their car failed to see the stop signs located on Pepper Street at the intersection of Rialto Avenue.  There was evidence that a walnut tree and shrubbery at the intersection impaired the visibility of the stop sign to such an extent that it was barely visible during the day and could not be seen by a southbound motorist at night.  There was also evidence that the painted "Stop Ahead" legend on the sidewalk was faded.  The Court of Appeal reversed the grant of directed verdict, holding that "although a public entity is not liable for failure to install traffic signs or signals [citations], when it undertakes to do so and invites public reliance upon them, it may be held liable for creating a dangerous condition in so doing.  [Citations.]"  (*Id.* at p. 746.)  The court found

that reasonable minds could differ as to whether the location of the stop sign created a dangerous condition:

> "In the present case one of the crucial factual issues was whether the position of the stop sign constituted a dangerous condition. From the evidence heretofore summarized, it is manifest that reasonable minds could well differ on that issue."

(*De La Rosa, supra*, 16 Cal.App.3d at p. 746.)

The matter before us does not involve a hidden or obstructed traffic sign. In contrast to *De La Rosa*, appellant has not argued that the pedestrian crossing signs, or the amber flashing light, were positioned in such a manner as to be barely visible. Instead, those signs were apparent to a driver using due care. The *De La Rosa* case does not convince us that summary judgment was improper here.

Next, appellant cites *Teall v. Cudahy* (1963) 60 Cal.2d 431 (*Teall*). In *Teall*, a seven-year-old child was hit by a truck when crossing an intersection. The plaintiff argued that the signal designed to guide pedestrians across the crosswalk in question was not visible from where the child commenced crossing. Instead, the only signal visible to her was one that indicated it was safe to cross. (*Id.* at p. 433.) The plaintiff argued that the arrangement of lights at the intersection constituted a dangerous or defective condition of public property. In reversing a grant of summary judgment in favor of the city, the Court of Appeal stated, "defendant undertook to control traffic at the intersection and invited reliance on the signals. It may be held liable if it created a dangerous or defective condition in doing so. [Citations.]" (*Id.* at p. 434.)

*Teall* is distinguishable. A pedestrian standing at the intersection where the child was standing could not see the signal that was intended to guide her safely across. Instead, she could only see a signal which would indicate to her that oncoming traffic was stopped. Thus, a reasonable person could have concluded that the placement of the signals created a dangerous condition. Even if both parties -- the driver and the pedestrian -- were acting with due care, an accident could occur due to the placement of

16

the signals. Here, there is no contention that the placement of the signals would lead a person acting with due care to cross at a time when it was not yet safe.

Appellant argues that here, as in *Teall*, the conditions at the subject crosswalk created a false sense of safety. Appellant fails to acknowledge that here, unlike in *Teall*, one of the parties -- the driver -- failed to act with due care, ignoring the visible signs and lights.

Appellant next cites *Mathews v. State of California ex rel. Department of Transportation* (1978) 82 Cal.App.3d 116 (*Mathews*). In *Mathews*, the plaintiff's car was struck broadside by another vehicle in an intersection where the traffic lights were malfunctioning. The plaintiff alleged that the traffic lights were operating under the supervision and control of the state, and that the state had been informed several times on the day of the accident that the traffic signal lights were malfunctioning, creating a highly dangerous situation at a heavily traveled intersection. Specifically, the electric signal controlling east-west traffic was continuously green (go) and the signal controlling north-south traffic was continuously red (stop). (*Id.* at p. 119.) The plaintiff appealed after the trial court granted judgment on the pleadings for the defendant. The Court of Appeal reversed, finding that the condition at the intersection could not be found not dangerous as a matter of law. (*Id.* at p. 122.) Specifically, the court explained, the motorist traveling through the green light would have no knowledge that the lights were malfunctioning, and may be "deceptively lulled into a sense of freedom from interference by cross traffic." (*Id.* at p. 121.) At the same time, out of exasperation and impatience, the motorist stuck at the red light might reduce or abandon caution and increase the risks. (*Id.* at p. 122.) Under the circumstances, the Court of Appeal was unable to conclude that the intersection was not dangerous as a matter of law. (*Ibid.*)

Appellant argues that here, as in *Mathews*, the pedestrian crossing did not know that the embedded lights were not functioning. Thus, appellant argues, the malfunctioning lights created a trap for pedestrians.

We disagree. The trap in *Mathews* was created in part by a red light that was stuck on the stop signal. Thus, even a motorist exercising due care, who had stopped in

17

accordance with the law, was likely to abandon caution and proceed into the intersection. Here, the driver who hit appellant had no such inducement to take risk. Instead, had he been using due care, he would have noted the pedestrian crossing signs and the flashing amber light, and appellant would have been able to cross the intersection safely. Appellant has failed to convince us that the malfunctioning embedded lights created the same sort of trap that existed in *Mathews.*

Finally, appellant cites *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749 (*Cole*). In *Cole*, a park attendant who was struck by a vehicle brought an action against the town alleging a dangerous condition. At the time of the accident, the plaintiff had parked her vehicle along a gravel strip between the park and the edge of a road. At the moment of impact, she was loading a bicycle into her trunk. A driver who had been drinking alcohol veered off the road and collided with the plaintiff as she loaded her vehicle. (*Id.* at p. 754.) Alleging a dangerous condition of public property against the town, the plaintiff argued that the town failed to allow adequate time and distance for the safe merging of traffic; failed to provide a reasonable and efficient barrier between the parking area and the road; failed to properly construct and maintain the parking area; or, alternatively, failed to prohibit or limit parking in the area, among other things. (*Id.* at p. 755.) The town was granted summary judgment on the ground that the plaintiff was unable to establish that any of the stated characteristics of the property was the cause of her injuries.

The Court of Appeal reversed. The court noted that plaintiff's theory was that the configuration of the road itself and the gravel parking area was such that drivers were induced to leave the road and swerve onto the parking area. The court further noted that the plaintiff had presented evidence to support this theory, such as a declaration from a neighbor who had just turned left into her driveway when the accident occurred. The neighbor declared that nearly every time she made the left with cars behind her, someone would exit the road and pass her on the right, thus driving into the gravel parking area. Another witness stated that he saw cars stack up behind vehicles attempting to turn left, and about once every two weeks drivers would pass such cars by exiting the road and

driving on the gravel area. Another witness reported seeing cars execute U-turns using the gravel area. (*Cole, supra*, 205 Cal.App.4th at pp. 759-760). Under the circumstances, the Court of Appeal found sufficient evidence to present a question of fact to the jury:

> "The foregoing evidence would seem to amply support a finding that a danger existed at the site of the accident of just the kind of injury plaintiff sustained. It would also support the attribution of this danger to the *physical characteristics* of the property. At least three such characteristics could be found to constitute an inducement or temptation for drivers to act as Rodriguez did: the presence of driveways across the street from the graveled area, which provided an occasion for some drivers to turn left, which in turn required them to stop and wait for oncoming traffic to clear; the absence of a second eastbound lane, which resulted in the formation of obstructions or stalls behind left-turning drivers; and the narrowness of the pavement, which made it impossible to pass such an obstruction on the right without entering the graveled area."

(*Cole, supra*, 205 Cal.App.4th at p. 760.)

The *Cole* court further found that the driver's intoxication was not a bar to a finding of liability on the part of the town. The court specified: "The status of a condition as 'dangerous' for purposes of the statutory definition does *not* depend on whether the plaintiff or other persons were actually exercising due care but on whether the condition of the property posed a substantial risk of injury to persons who *were* exercising due care. [Citation.]" (*Cole, supra*, 205 Cal.App.4th at p. 768.) Thus, in *Cole*, the court was persuaded that the conditions of the road and parking area at issue induced even careful drivers to swerve off the road into the parking area, thus creating substantial risk to pedestrians.

Here, unlike in *Cole*, appellant did not present evidence that the condition of the property posed a substantial risk of injury where drivers are exercising due care. Instead, the flashing amber light, the pedestrian crossing signs, and the painted crosswalk would induce a careful driver to slow down and watch for pedestrians. Unlike the circumstances in *Cole*, no characteristic of the property would induce a safe driver to engage in any action that would put a pedestrian at risk.

19

In sum, we find that the cases cited by appellant do not suggest that a reasonable juror could find a dangerous condition of public property existed at the intersection of Valley Boulevard and Meeker Avenue on the evening of the accident. Instead, no physical condition of the property would lead to a substantial risk of injury as a matter of law. In particular, there is a painted pedestrian crosswalk; a pedestrian crosswalk sign and signal in each direction; and a large, amber light which flashes in each direction when activated. Unlike the cases cited by appellant, no physical characteristic of the intersection would induce drivers to act in a way that created risk, or lull pedestrians or drivers into a false sense of safety. Under the circumstances, the malfunctioning embedded lights are trivial defects as a matter of law. (§ 830.2.)

## VI. Section 830.8 immunity

Having determined that the defect at issue was trivial as a matter of law pursuant to section 830.2, we need not consider the question of whether the defect at issue falls into the categories of immunity provided by sections 830.4 and 830.8. However, we briefly discuss these statutes and related case law in order to fully address appellant's argument that the City's failure to maintain the embedded lights created a trap for unwary members of the public.

Section 830.4 specifies that a condition is not dangerous "merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." (§ 830.4.) The City takes the position that the absence of flashing lights in the crosswalk is a failure to provide such signals as set forth in section 830.4, and thus is not dangerous as a matter of law.

For those traffic signals not specifically referenced in section 830.4, section 830.8 provides immunity. Section 830.8 provides that a public entity is not liable for an injury caused by any traffic or warning signals, signs, markings or devices described in the Vehicle Code. However, the statute specifies that "Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4)

20

was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (§ 830.8.)

Relying on section 830.8, appellant argues that a reasonable person could conclude that the City's actions in failing to maintain the embedded lights, and failing to warn the public that the lights were not functioning, created a trap for pedestrians such as appellant who acted in reliance upon such lights.

Appellant cites several cases in support of this theory. (See *Bakity v. County of Riverside* (1970) 12 Cal.App.3d 24 [stop sign placed about 36 feet east of the east edge of the street and near trees could be considered a dangerous condition of public property because trees obstructed the view of approaching vehicles, and because the sign was placed 36 feet beyond where the oncoming vehicle was supposed to stop, which is not where such signs are normally placed]; *Briggs v. State of California* (1971) 14 Cal.App.3d 489 [creation of a dangerous condition was an issue of fact for the jury where property was unstable and sign warning of mudslide danger was not very visible and could not be read by the driver of a car traveling between 45 and 55 miles per hour]; *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161 [jury could find dangerous condition of public property where the intersection was dangerous not only because of a failure to provide warning or regulatory signs but also because of the presence of trees, the differences in elevation between the roadway grades and adjoining fields, and the method of striping the intersection].)

The cases cited by appellant do not suggest that the nonfunctional embedded lights created a trap under the circumstances of this case. The lights were not necessary to warn motorists of a dangerous condition. Instead, they were additional safety measures provided to pedestrians using a well-marked crosswalk. Cars approaching the intersection had several other sources available to warn them when a pedestrian was in the crosswalk. There were no trees or other obstructions blocking oncoming vehicles from seeing the pedestrian warning signs or the flashing amber light. Nothing impaired a

21

motorist driving with due care from seeing the warning signs, and nothing lulled a careful motorist into a dangerous situation.

Further, we note that nonfunctioning lights, in general, do not give rise to liability on the part of a public entity. In *Chowdhury*, this court addressed this issue. There, the deceased was traveling through an intersection during a power outage. In discussing the issue of whether a dangerous condition existed at the intersection, the *Chowdhury* court acknowledged that where the government creates a trap and thereby causes an accident to occur, it may be held liable. However, no liability attaches where the lights in question are not functioning at all:

> "'When the [traffic] lights were turned off, their defective condition could no longer mislead or misdirect the injured party.' [Citations.] The same result obtains whether the traffic signals are extinguished by design or by accident."

(*Chowdhury, supra*, 38 Cal.App.4th at p. 1195.)

The *Chowdhury* court explained that "when the signals were extinguished during the power outage, the City did not invite the public to rely on the signals as a means of controlling the right-of-way at the intersection." (*Chowdhury, supra*, 38 Cal.App.4th at p. 1195.) Similarly, the City did not invite pedestrians to rely on the malfunctioning embedded lights at the intersection of Valley Boulevard and Meeker Avenue. Instead, those lights "gave no indication at all, and did not mislead or misdirect" anyone. (*Ibid*.)

In light of the law discussed above, we must reject appellant's argument that the conditions at the intersection in question created a trap for pedestrians.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.